Carlos LOVELL, Fred Lovell, Lovell
Cattle Co., Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 85–8860.

United States Court of Appeals,
Eleventh Circuit.

Aug. 8, 1986.

Robert B. Thompson, Gainesvillle, Ga.,
James A. Bruton, III and Gerald A. Feffer,
Washington, D.C., for plaintiffs-appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen.,
Michael L. Paup, William S. Estabrook,
Richard J. Driscoll and Roger M. Olsen,
Tax Div., U.S. Dept. of Justice, Washington,
D.C., for defendant-appellee.

Before VANCE and JOHNSON, Circuit
Judges, and BOWEN *, District Judge.

JOHNSON, Circuit Judge:

This is an appeal from the district court's
pretrial order dismissing a suit by appellants
for injunctive relief against Internal
Revenue Service (IRS) levies and tax liens
executed to satisfy a jeopardy assessment.
We AFFIRM the judgment of the district
court.

I

The IRS entered the jeopardy assessment
at issue in this case against Lovana
Farms, Inc. ("Lovana"), a Georgia corporation
owned by Virgil Lovell. To satisfy a
portion of this assessment, the IRS filed
notices of lien against Carlos Lovell (Virgil
Lovell's father), Fred Lovell (Virgil Lovell's
uncle), and the partnership formed by the
two elder Lovells, the Lovell Cattle Company
(LCC); it also seized some $11,500 from
Carlos Lovell's bank account. These parties
were all involved in what the government
alleged was an abusive tax shelter
involving questionable sales of cattle from
LCC to Lovana, and from Lovana to certain
"investors." Neither the elder Lovells nor
LCC received pre-seizure notice of the IRS
liens.

* Honorable Dudley H. Bowen, Jr., U.S. District
Judge for the Southern District of Georgia, sitting
by designation.

The appellant sought injunctive relief against the IRS action and also filed a claim for wrongful levy under Internal Revenue Service Code § 7426 and a quiet title action under 28 U.S.C.A. § 2410. The district court severed the latter two claims for separate trial. That court concluded that the action for injunctive relief was due to be dismissed under the Anti-Injunction Act, 26 U.S.C.A. § 7421(a), which generally mandates that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, unless that person falls under certain exceptions. The district court found that no exception applied. This appeal followed.

## II

We may not reverse a district court order denying a preliminary injunction unless the lower court abused its discretion. *Callaway v. Block*, 763 F.2d 1283, 1287 (11th Cir.1983). No such abuse of discretion was present here.

Appellants contend that they were entitled to pre-seizure notice from the IRS under the terms of code section § 6212(a), which provides for such notice to "taxpayers," or, alternatively, under code § 6901, which provides for such notice to "transferees." The district court rejected these arguments. It reasoned (1) that since Lovana, not the Lovells or LCC, was the "taxpayer," no notice to the latter was necessary under § 6212(a); (2) that the Lovells were in any case "alter egos" of Lovana and thus, were sufficiently informed by the pre-seizure notice sent to Lovana; and (3) that even if the Lovells were not alter egos of Lovana, they were third parties not entitled to contest the merits of the assessment against Lovana. The court determined further that the IRS pursued the Lovells as a part of a single whole with Lovana, not as transferees, so that code § 6901 is inapplicable.

Appellants challenge these conclusions on appeal. We need not reach the alter ego and transferee issues. We hold that even if appellants did qualify for no-

tice under either theory, they must still be denied injunctive relief because they do not show irreparable harm and inadequacy of alternative remedies. In so holding, we follow the Ninth Circuit's conclusion that for a tax injunction to issue despite the general prohibition of the Anti-Injunction Act, the movant must not only qualify under an exception to that Act, but must also satisfy traditional standards for equitable relief. *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 313–314 and n. 1 (9th Cir.1982). *See also Perlowin v. Sassi*, 711 F.2d 910, 912 (9th Cir.1983); *Philadelphia and Reading Corp. v. Beck*, 676 F.2d 1159, 1163 (7th Cir.1981).

In *Cool Fuel*, the Ninth Circuit noted that:

> Injunctive relief against the IRS is generally prohibited by the Anti-Injunction Act. 26 U.S.C. § 7421(a). Although Congress has recognized exceptions to the Anti-Injunction Act (in this case the exception carved out by § 6213 where statutory notice procedures have not been followed), neither the statute nor the legislative history says anything to support a contention that the usual equitable prerequisites to injunctive relief should not be required.

*Cool Fuel, supra*, at 313. As the Ninth Circuit panel indicated, the Supreme Court has held that an injunction should issue

> only where the intervention of a court of equity "is essential in order effectually to protect property rights against injuries otherwise irremediable." The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.

*Id.* at 314 n. 1 (citations omitted).

In the instant case, the district court found that appellants would not suffer irreparable harm if an injunction did not issue. This finding was not contested on appeal.

The lower court also determined that appellants had alternative remedies available, short of the extraordinary measure of an

injunction, in the form of the wrongful levy and quiet title actions. Indeed, that court actually calendared a post-seizure adjudication for the Lovells and LCC on these claims so that their rights could be determined quickly. The Lovells obtained a continuance of these actions.

Absent any showing of irreparable harm and inadequacy of legal remedies the federal courts have no equity jurisdiction and this suit for injunctive relief is due to be dismissed. The legality of the tax liens against the Lovells and LCC may be decided on the merits in the wrongful levy and quiet title actions.

AFFIRMED.

VANCE, Circuit Judge, dissenting:

I start with what I understand to be a central meaning of procedural due process: that deprivations of property by governmental action ordinarily must be *preceded* by a fair hearing. This was the cornerstone of the Supreme Court's decision in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In striking down state prejudgment replevin statutes the Court reflected:

> [T]he prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional history, that we place on a person's right to enjoy what is his, free of governmental interference.

*Id.* 407 U.S. at 81, 92 S.Ct. at 1994.

The Internal Revenue Service clearly has the right and power to assess taxes on a taxpayer and to use liens and levies to assure the collection of those taxes.[1] That power is not the reason for this dissent. I dissent because the holding that relief for the Lovells is barred by the anti-injunction act permits the IRS to misuse its power by attempting to collect the taxes of one party from another on the simple claim that one is the alter ego of the other.[2] The alter ego claim may be valid or invalid, well-motivated or ill-motivated, supported or unsupported;[3] but the naked application of that label is all that the IRS thinks that it needs to seize any property it desires.

The alter ego doctrine has previously been used primarily to make wholly owned corporations and their sole shareholders responsible for one another's taxes.[4] The legal relationship between those parties is obvious, and such use of the alter ego doctrine can be justified. There is *no* legal precedent for applying that doctrine to the situation now before the court. Fred and Carlos Lovell have no legal connection whatever with Lovana, the tax-owing corporation. They are, respectively, the father and uncle of Virgil Lovell, the owner of Lovana, but they are neither shareholders nor officers of Lovana.

The Internal Revenue Code contemplates two classes from which taxes are collected: the taxpayer who incurred the burden and third parties to whom the taxpayer has transferred property that should have been available to satisfy that burden. The IRS must follow statutory procedures for each of these classes, and each class has reme-

1. It is also clear that application of the anti-injunction act to bar a *taxpayer's* suit to prevent such collection is not a denial of due process so long as the taxpayer has access to judicial review in a refund action. *Professional Engineers, Inc. v. United States,* 527 F.2d 597, 600 (4th Cir.1975).

2. There is precedent in this circuit that the act, 26 U.S.C. § 7421(a), does not prevent suits for an injunction brought by someone whose property has been levied upon to pay the tax obligations of another. *Lange v. Phinney,* 507 F.2d 1000, 1005 (5th Cir.1975); *Campbell v. Bagley,* 276 F.2d 28, 33 (5th Cir.1960); *see also South Carolina v. Regan,* 465 U.S. 367, 377 n. 14, 104 S.Ct. 1107, 1113 n. 14, 79 L.Ed.2d 372 (1984).

3. By this dissent I express no opinion on whether the Lovells can eventually be proven to be participants in an abusive tax shelter or whether they can properly be shown to be responsible for Lovana's taxes.

4. The only case cited to us that goes beyond sole shareholders is *Al-Kim, Inc. v. United States,* 650 F.2d 944 (9th Cir.1979), where there were several corporations and several shareholders. That opinion does not clearly state the interrelationships among the various corporations and shareholders, but there clearly were legal connections.

dies to protect it from IRS overreaching. By invoking the alter ego doctrine here the IRS has worked its magic to strip appellants of the protections given to either class and to place them in a less advantageous position than if they had themselves incurred the tax obligation. Lovana had notice of and the right to contest the propriety and the amount of the assessment. The district court found the Lovells did not share in those rights because they were not the taxpayer. The first notice the Lovells received that Lovana's tax burden was to be imputed *to them* was *after* their property was slapped with liens and their bank account seized. Nor were the Lovells allowed the protection the code allows to third party transferees because as alter egos they are claimed for this purpose to be the same as the taxpayer. If proper transferee procedures had been followed the *IRS* would have had the burden of proving that Lovana had transferred property to the Lovells and could reach only that property transferred from Lovana. By this process the *Lovells* must now shoulder the burden of proving that their property did *not* come from Lovana, and the IRS has put liens and levies on *all* their property, even that clearly owned before Lovana incurred any tax liability. Thus the Lovells have neither the rights of the taxpayer nor the rights of the third party. There is here a fundamental unfairness and lack of due process.

The majority avoids passing on the Lovells' alter ego and transferee arguments on the ground that the Lovells did not contest a district court finding that they had suffered no irreparable harm. Whether irreparable harm was suffered is a distinct question from whether the Lovells qualified for one of the statutory exceptions to the anti-injunction statute. The district court's finding that there was no irreparable harm dealt only with the seizure of the Lovells' bank account and was made in discussing whether they qualified for one of the judicial exceptions to the act.[5] The Lovells were, however, seeking to come under one of the statutory exceptions to the anti-injunction act listed in 26 U.S.C. § 7421(a).[6] Until they qualified for one of those exceptions, proof of irreparable harm would not suffice to gain the Lovells an injunction. The Lovells' alleged failure to discuss directly the district court's limited finding of lack of irreparable harm does not justify this court's refusal to reach the merits of their claim to a statutory exception to the anti-injunction act. By its refusal, this court leaves the Lovells and future third parties unprotected by statutory and constitutional due process from IRS attempts to collect from them taxes due from an unrelated taxpayer.

The language of the Court in *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969), is equally applicable here:

> Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing ... this ... procedure violates the fundamental principles of due process.

I dissent.

---

**5.** That the Lovells have suffered irreparable harm seems obvious. Their real property is encumbered; postseizure relief will not restore the lost opportunities for sale. Their bank account has been seized; though they may recover their money, they cannot recover the time during which they had no access to it. As the Court in *Fuentes* states: "This Court has not ... embraced the general proposition that a wrong may be done if it can be undone." 407 U.S. at 82, 92 S.Ct. at 1995, quoting *Stanley v. Illinois,* 405 U.S. 645, 647, 92 S.Ct. 1208, 1210, 31 L.Ed.2d 551 (1972).

**6.** The distinction is significant. If the Lovells qualify for one of the statutory exceptions to section 7421(a), their request for an injunction is considered under ordinary equity standards. If their request comes within the statute they must further demonstrate that the government cannot prevail under the law. *Bob Jones University v. Simon,* 416 U.S. 725, 745, 94 S.Ct. 2038, 2050, 40 L.Ed.2d 496 (1974).