[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12400
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 8, 2010
JOHN LEY
ACTING CLERK

D. C. Docket Nos. 07-14127-CV-DLG,
07-14249-CV-DLG

JOSEPH A. DELVECCHIO,
CAROL DELVECCHIO,

Petitioners-Appellants,

versus

INTERNAL REVENUE SERVICE,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 8, 2010)

Before BARKETT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Joseph and Carol DelVecchio (collectively, the DelVecchios), proceeding

*pro se*, appeal the district court's grant of summary judgment to the Internal Revenue Service (IRS) and its denial of their cross-motions for summary judgment on their Freedom of Information Act (FOIA) claims and quiet title action. On appeal, the DelVecchios argue that (1) the district court erred by finding that the IRS conducted a good-faith search reasonably calculated to uncover documents responsive to their FOIA records request, and (2) the court erred by finding, with regard to their quiet title action, that their challenge to the procedural validity of a 2001 tax assessment was barred by res judicata.[1] After a thorough review of the briefs and the record, we affirm the judgment of the district court.

## I.

The present appeal stems from a civil audit of the DelVecchios' tax returns for 1987 and 1988 that the IRS undertook in early 1990. The IRS sent the DelVecchios a notice of deficiency (NOD) in 1994 calculating a tax deficiency of $29,400 for 1987 and $16,699 for 1988, based primarily on underreported income. The DelVecchios filed a Tax Court petition challenging the NOD and seeking

---

[1] The DelVecchios also argue, in passing, that the court ignored their rights to due process and equal protection under the Fourteenth Amendment. Thus, they have abandoned any claim in this respect. *See Bayro v. Reno*, 142 F.3d 1377, 1379 (11th Cir. 1998) (per curiam) ("[W]hen a party lists an issue for appellate review but does not discuss that question in their argument, they have abandoned it."). In addition, they argue for the first time that the court failed to address "the question of the IRS liens relative to the jointly held Florida homesteaded property" based on the rights and obligations of married couples under Florida law and, accordingly, they have forfeited this claim. *See Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2007) (holding that we generally will not consider forfeited issues raised for the first time on appeal in civil cases).

redetermination of the deficiencies. In 2001, following a civil trial, the Tax Court

sided with the IRS in *DelVecchio v. Comm'r* ("*DelVecchio I*"), 81 T.C.M. (CCH)

1712 (2001), and found, in relevant part, that the DelVecchios had understated

their tax liabilities by underreporting their net income and failing to report a 1988

capital gain. The DelVecchios appealed. We affirmed in *DelVecchio v. Comm'r*,

37 F. App'x 979 (11th Cir. 2002) (table).

The IRS assessed the deficiencies and interest on November 13, 2001. The

assessment against Carol totaled $129,600 for 1987 and $110,905 for 1988, and the

assessment against Joseph totaled $189,137 for 1987 and $177,448 for 1988.

Commencing efforts to collect these taxes, the IRS sent the DelVecchios notices of

federal tax liens against them and demands for payment to this effect. In 2002, the

IRS mailed the DelVecchios a document entitled "Final Notice – Notice of Intent

to Levy and Notice of Your Right to a Hearing." The DelVecchios invoked their

right to a hearing, challenging, in relevant part, the IRS's legal authority to levy

any of their assets. Following a hearing, the IRS Office of Appeals issued a

"Notice of Determination Concerning Collection Action(s)," which, *inter alia*,

sustained the proposed levy and found the assessments legally supported and

timely made.

Then, the DelVecchios petitioned the Tax Court for review, arguing, in part,

3

that the 1994 assessment upheld in *DelVecchio I* was premature because it occurred during a prohibited 90-day window following the issuance of the NOD and that, accordingly, the premature 1994 assessment invalidated the later November 2001 assessment. In its opinion in *DelVecchio v. Comm'r* ("*DelVecchio II*"), 88 T.C.M. (CCH) 295 (2004), the Tax Court found that, assuming *arguendo* that the IRS made a premature assessment in 1994, such error was harmless in light of the "timely and validly made" assessment in November 2001. Thus, it concluded that the DelVecchios failed to show "any irregularity in the assessment procedure which would raise a question about the validity of the assessment," and that, accordingly, the November 2001 assessment was valid.

The DelVecchios appealed and we ultimately held that there was "no reversible error in the Tax Court's determination that [their] 1987 and 1988 income tax liabilities were timely and validly assessed in 2001," and that, "because adherence to statutory procedures was properly verified, there was no error in the decision to allow collection of the income tax liabilities to proceed." *DelVecchio v. Comm'r*, 166 F. App'x 431, 432 (11th Cir. 2006) (per curiam) (unpublished).

In March 2007, while the IRS's collection efforts continued, the DelVecchios submitted the instant FOIA request to the agency, seeking, *inter alia*, their "Individual Master File" (IMF and "non Individual Master File") for the 1987

4

and 1988 tax years and all documents supporting the November 2001 assessment against them.

The IRS responded to the DelVecchios' FOIA request by seeking additional time in which to reply. The DelVecchios filed the instant *pro se* FOIA complaint. In an effort to forestall collection efforts by the agency, the DelVecchios also filed a *pro se* suit in state court, seeking to quiet title to certain real property subject to a tax lien, arguing that "the IRS [had] no assessment against [them]" under applicable law. Following removal by the IRS, the district court consolidated the two cases for the purposes of discovery.

Shortly after the DelVecchios filed their complaint, the IRS provided them with approximately forty pages of responsive documents. A declaration by IRS Disclosure Specialist Joyce E. Broughton represented that she followed standard agency procedure in responding to the DelVecchios' FOIA request and that she withheld no responsive documents.

## II.

We review "a district court's grant of summary judgment in a FOIA case *de novo*, viewing all facts and reasonable inferences in the light most favorable to the non-moving party, and applying the same standard used by the district court." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th

Cir. 2008) (citation omitted).  In addition, we construe *pro se* pleadings liberally. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir.), *cert. denied*, 129 S. Ct. 632 (2008).

"Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified." *Miccosukee*, 516 F.3d at 1243 (quotation omitted).  "Summary judgment is appropriate if the pleadings, depositions, admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)).

The FOIA, 5 U.S.C. § 552, was designed "to encourage public disclosure of information so citizens may understand what their government is doing." *Miccosukee*, 516 F.3d at 1244 (quotation omitted).  Accordingly, it "gives federal district courts the jurisdiction 'to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld.'" *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 384, 100 S. Ct. 1194, 1200 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)).

The agency bears the burden of showing "'beyond a material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Miccosukee*, 516 F.3d at 1248 (quoting *Ray v. U.S. Dep't of Justice*,

6

908 F.2d 1549, 1558 (11th Cir. 1990), *rev'd on other grounds sub nom. U.S. Dep't of State v. Ray*, 502 U.S. 164, 112 S. Ct. 541 (1991)). It "need not show that its search was exhaustive." 908 F.2d at 1558. The agency may meet this burden by producing relatively detailed and nonconclusory affidavits submitted in good faith by responsible officials. *Id.* (citation omitted). "If the government agency meets its burden of proving that its search was reasonable, then the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith." *Id.*

> In *Ray* we quoted the Eighth Circuit with approval:
>
> [T]he fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. Thus, the [agency] is not required by [FOIA] to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which they might be expected to be found; it is not necessary 'to create a document that does not exist in order to satisfy a [FOIA] request.'

908 F.2d at 1559 (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1985)).

Construing the DelVecchios' brief liberally, we discern several arguments: (1) essential facts were in dispute, including the adequacy of Broughton's declaration; (2) the IRS did not conduct a proper FOIA search; (3) the IRS never provided the requested Tax Court documents; and (4) the DelVecchios were

7

injured by an untimely reply to their FOIA request.

We reject these arguments. First, with regard to Broughton's declaration, the IRS showed that her mistaken reference to the 1994 declaration was a harmless typographical error not otherwise repeated in the record. Second, the DelVecchios failed to present anything more than unsupported conclusory allegations to show that the IRS conducted its search improperly or in bad faith. As stated above, the IRS in fact provided forty pages of documents. Third, the IRS correctly replied that it was not required to produce Tax Court documents. Fourth, the DelVecchios' timeliness challenge was moot because the IRS did in fact provide them documents. In sum, the district court did not err by granting summary judgment to the IRS on the DelVecchios' FOIA claims because the IRS submitted an uncontradicted declaration demonstrating that it followed standard procedures in responding to their request and that it provided them with all the responsive documents that it located, and because the DelVecchios provided nothing more than unsupported conclusory assertions to show that the IRS's search was unreasonable or conducted in bad faith.

## III.

A district court's decision to bar a claim on grounds of res judicata presents a question of law that we review *de novo*. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d

1235, 1238 (11th Cir. 1999) (citations omitted).  Moreover, we may affirm the decision of the district court "on any ground supported by the record."  *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1343 (11th Cir. 2009) (citation omitted).

Under federal law, "the United States may be named a party in any civil action or suit in any district court . . . to quiet title to . . .  real or personal property on which the United States has or claims a mortgage or other lien."  28 U.S.C. § 2410(a).  This statute authorizes a taxpayer to challenge the procedural validity of a tax lien but not the merits of the underlying assessment.  *Stoecklin v. United States*, 943 F.2d 42, 43 (11th Cir. 1991).

The district court allowed this action to proceed solely under the federal quiet title statute, and it granted the IRS's motion to dismiss in all other respects. The district court properly found that the DelVecchios could not use Florida law to challenge the validity of the tax lien because federal statutes controlled.  *See, e.g.*, *United States v. Brosnan*, 363 U.S. 237, 240, 80 S. Ct. 1108, 1110 (1960) ("Federal tax liens are wholly creatures of federal statute. . . . Consequently, matters directly affecting the nature or operation of such liens are federal questions, regardless of whether the federal statutory scheme specifically deals with them or not.").

The doctrine of res judicata, or claim preclusion, bars a litigant from raising

claims that were raised or could have been raised in a prior action if: "(1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003) (quotation omitted). For purposes of res judicata, the prior and present causes of action are the same if they arise "out of the same nucleus of operative fact, or [are] based upon the same factual predicate." *Id.* (quotation omitted).

Even if the causes of action in the present and prior actions differ, the doctrine of collateral estoppel, or issue preclusion, precludes a court "from relitigating an issue when the identical issue has been litigated between the same parties and the particular matter was fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1291 (11th Cir. 2009) (quotation omitted). This doctrine requires that the issue "was a critical and necessary part of the prior proceeding." *Bryant v. Jones*, 575 F.3d 1281, 1303 (11th Cir. 2009).

We conclude that the district court did not err by granting summary judgment to the IRS on the DelVecchios' quiet title action. It is undisputed that (1) the Tax Court had jurisdiction in *DelVecchio II* and we had jurisdiction over the

10

DelVecchios' appeal from that action; (2) a final judgment on the merits exists from that proceeding; and (3) both that proceeding and the current matter ultimately concerned identical parties—namely, the DelVecchios and the IRS.

The DelVecchios previously challenged the procedural validity of their 2001 tax assessment before the Tax Court and this Court in *DelVecchio II* as a critical and necessary part of those proceedings, and we previously held that the 2001 tax assessment was procedurally valid. A fair reading of the record shows that both *DelVecchio II* and the instant action stem from the "same nucleus of operative fact" and "the same factual predicate."

But even if one concludes that the DelVecchios' present and prior litigation involves two different causes of action—with the former proceeding under the Tax Code and the latter proceeding under 28 U.S.C. § 2410—their attempt to re-raise an identical issue is barred by collateral estoppel. The DelVecchios cannot obtain a second bite of the apple by recasting their complaint around a 2005 notation in Carol's individual non Individual Master File showing only that the IRS transferred her liabilities stemming from the November 2001 assessment to another account, or an April 2008 transcript authenticated by IRS personnel that reflects the same point. Thus, we affirm the district court's ruling without reconsidering the merits of the DelVecchios' underlying claims against the federal tax lien.

11

**AFFIRMED.**